## HAMILTON & WIFE *vs.* CLEMENTS' ADM'RS ET ALS.

1. J. C. conveyed by deed to his son W. C certain slaves, with the understanding that at the death of S. C. he should divide them equally with his sister, who was then the wife of S. H. J. C. having died, the son claimed the slaves absolutely until his own death, after which S H., on valuable consideration, sold and released to the distributees of W. C.'s estate "all the right, title, claim, interest and demand," which he "then had or might thereafter recover in and to the goods and chattels, rights and credits, lands and tenements of W. C. or J. C. deceased." *Held,*
   1. That the deed of S. H. embraces the claim of his wife to the slaves—it not appearing that he had any other claim or demand against the estate of W. C. at the time of its execution.
   2. That S. H. is estopped from questioning the validity of his deed, and cannot therefore be joined as a co-complainant with his wife in a bill to recover her portion of the slaves.

Error to the Chancery Court of Randolph. Tried before the Hon. David G. Ligon.

RICE & WHITE, for plaintiffs:

The deed relied on by defendants as a bar to the relief sought, does not include or embrace any right or interest of Mrs. Hamilton, but embraces only the *distributive portions* of Hamilton, Watts and McAdams in the estates of James and William Clements. It does not assign any rights given to Mrs. Hamilton by any *agreement* or *contract*, but only such rights as were given by *law* in the estates of James and William Clements, aside from any *contract* or *agreement* of William Clements.

The recital of a consideration in the husband's deed is not evidence against the wife in this case.

14

The right of the husband does not attach upon property inherited by the wife, until distribution.—Kelly's adm'r v. Kelly's dist. 9 Ala. 908; Vandeveer v. Alston and others, 16 Ala. 494; 2 Brockenbrough.

A trustee cannot set up the statute of limitations against the claim of the *cestui que trust*.—Webster v. Webster, 10 Vesey, 316; Decouche v. Santier, 3 J. C. 216; Higgins v. Crawford, 2 Vesey, 571; Prince v. Heylin, 1 Atk. 493.

A legacy to a wife will not pass by an assignment of the husband for the benefit of his creditors of all of his personal property.—Skinner's Appeal, 5 Penn. State Rep. 262. The equity of the wife will not pass by an assignment of the husband for valuable consideration.—Stevenson v. Reigart, 1 Gill, 1-27; 4 G. & J. 282; 5 J. C. 473.

This equity of the wife depends on the peculiar practice of the court, and not on any general reasoning.—Murray v. Ellibank, 13 Vesey, 6; 5 J. C. 474, cited above. And it matters not who is plaintiff.—Gardiner v. Walker, 1 Str. 503.

The husband being joined with the wife is no objection to relief being granted to the wife.—Boykin & Wife v. Ciples & Wife, 2 Hill's S. C. Rep. 203; Brin and others v. Heath, 6 Howard, 240; Story's Eq. Plead. § 63; Lillia v. Aivey, 1 Vesey, 278; 1 Fon. Eq. B. 1 ch. 2, § 6, and note p; Griffith v. Hood, 2 Vesey, sr. 452.

No counsel for defendants.

PARSONS, J.—The plaintiffs in error filed their bill in the Chancery Court for Randolph county, against the administrators and children of William Clements, deceased, and the husbands of the daughters. The bill states that James Clements, in the year 1832, by his bill of sale conveyed to his son, the said William Clements, now deceased, the title to certain negro slaves, without any valuable consideration, although the bill of sale acknowledged a consideration of fifteen hundred dollars. The complainants also state that the parties to the bill of sale agreed, when the bill of sale was executed, that the said William should hold the slaves and their increase in trust until the death of the said James, and then divide them equally between himself and Mrs. Hamilton, who is one of the complainants,

and she is also a daughter of the said James. The complain-
ants further state in their bill, that the said James departed this
life, in the year 1840, and that William thereafter refused to di-
vide the negroes, but held and claimed them all as his own
until his death, and that his administrators still refuse to divide
them. It is the object of the complainants by their bill, to re-
cover Mrs. Hamilton's share of the negroes. The answers all
deny the material facts stated in the bill. It appears by the
case that Richard J. Watts, the said Samuel Hamilton and
Francis McAdams married daughters of James Clements, and
that James M. Smith, Ephraim Carpenter and Joseph T. Harkins
married daughters of William Clements. The defence mainly
turned on a deed, bearing date 14th of Dec. 1843, executed by
said Richard J. Watts, Samuel Hamilton and Francis McAdams,
to said James M. Smith, Ephraim Carpenter and Joseph T. Har-
kins, in right of their wives, and also to said E. Carpenter as guar-
dian of another infant daughter of Wm. Clements. The grantors
by this deed acknowledged a consideration of three hundred and
fifty dollars, and thereby for that consideration granted, bargained,
sold, conveyed and released to the grantees " all the right, title,
claim, interest and demand" which they, the grantors, then had
or might thereafter recover, in and to the "goods and chattels,
rights and credits, lands and tenements of William Clements,
deceased, or James Clements, deceased;" and covenanted that
they would forever warrant and defend the interest that they
then had or might thereafter recover, and which, as the deed
says, "is hereby conveyed," in the above-mentioned property,
against themselves, their heirs, &c." And then it is stated that
"this conveyance shall include the distributive shares of the said
James M. Smith, Joseph T. Harkins, Ephraim Carpenter and
Permella Clements in the estate of William Clements, deceased
—the latter was the ward of E. Carpenter, before alluded to.
The grantors further covenanted to indemnify and save the
grantees harmless against all costs that might accrue in prose-
cuting any suits for the recovery of any property belonging or
pertaining to the estate of William Clements, deceased—that is
to say, all suits that had been or might thereafter be commenced
by the grantors against the administrators or heirs at law of
William Clements, deceased, for the recovery of any interest in
the estate of said deceased. The question is whether this deed

includes the claim of the complainant, Samuel Hamilton, in right of his wife, to the share of the slaves for which this suit was brought? Those slaves formed no part of the estate of James Clements; but that was not the case in respect of William Clements, who had the clear legal title and held the slaves as his own, against the claim of Mrs. Hamilton, as long as he lived, and his representatives held them in like manner afterwards. This deed was executed under those circumstances. It may be admitted that the deed is, in some respects, very obscure, but if it means any thing, it must extend to the claim of Mrs. Hamilton to a share of these negroes. It does not appear that either of the grantors had any claim or demand against the estate proper of William Clements. There is no very obvious reason why Watts & McAdams joined in this deed, but it may be conjectured that the grantors all had supposed that this property might be recovered as part of the estate of James Clements; but there is no legal evidence of this before us, and therefore we cannot look to what is said by some of the answers upon this point. This deed, it is true, does not in terms mention Mrs. Hamilton's claim to a share of these negroes, but we think it reasonably clear that it was intended to convey it; otherwise, so far as we can see, it could operate upon nothing. It may be admitted that the deed, as to the question of its extent, is doubtful, but the rule is that deeds are to be taken most strongly against those who make them. The counsel for the plaintiffs in error have refered us to a decision, which we think can be reconciled with the view we have taken; we allude to the case of Skinner's appeal, 5 Barr's R. 262. That was an assignment to pay debts, and the question was whether a legacy to the debtor's wife passed to the assignees. The deed of assignment conveyed some real estate, describing it, and also "all the grantor's personal property, of any kind soever, which he hath or is in any manner entitled to, be the same in possession or action, viz:" goods in store and household furniture, together with the accounts standing on the books. These were in trust to pay certain preferences, and then debts generally, without any stipulation for a release. It was contended by the counsel, that the trustee was not a purchaser for value. The court held that the assignment did not include the legacy; "for the words of the assignment extend to the husband's personal property, of

Hamilton & Wife v. Clements' Adm'rs et al.

any kind whatsoever, which he holds or is any manner entitled to, be the same in possession or action, and this general description is followed by a specification which rather restrains than enlarges it." It was not thought, in that case, that the legacy was intended to be conveyed; but in the present case we think the wife's claim was intended to be conveyed. In the present case there are no restraining words which, as we think, are material to be considered. This is a bill filed by Samuel Hamilton and wife, without noticing his conveyance of his wife's right to a division of the slaves in question. We think that such a bill is, generally at least, to be considered as the bill of the husband. The complainants by the bill in this case are forced to question the validity of the husband's conveyance, to some extent. To this question the husband ought not to be a party plaintiff, because the wife claims against him or against what he has done. In such case the wife ought to sue by her next friend. Then his acts could be properly investigated.— Owden v. Campbell, 8 Simons, 551; Powlet v. Deleval, 2 Ves. sr. 666; Griffith v. Hood, 2 Ves. sr. 452. In this case the husband's deed is an estoppel against any thing that he could allege, on the ground of its invalidity in respect of his wife. So far as he could convey his wife's equitable interests he did so, and if thereby he defrauded her, that is not to be alleged by him. For this reason, a suit by him and her, the object of which is to question what he has done, is not appropriate; but in such case, she should file a bill by her next friend.—See Dewall & Wife v. Covenhogan, 5 Paige's R. 581. If she is entitled to an equitable lien upon what he assigned or released of an equitable estate to which she was entitled, (and we do not now enquire of the difference between an assignment on valuable consideration and a release, where the instrument can properly operate as a release, on valuable consideration,) still this bill is not adapted to the case. It goes merely for Mrs. Hamilton's right to a share of the slaves, without noticing her husband's conveyance.

Let the decree be affirmed.

CHILTON, J., having been of counsel in a case connected with this, did not sit.